323-0380 Opposed to Annexation of Parcels and Unabsorbed Registration in Orinthorpe Opposed to High-Density Bureau v. City of Joliet v. Municipal Corporation of Traffic Stops and Country Stores, Inc. and Brick Shuttles, Appalachia by Capitol Thank you. Mr. Shapiro, good afternoon. Good afternoon. You may approach, yes. Good afternoon. I'm pleased to court counsel. My name is Daniel Shapiro and I represent the appellants in this case. On July 25th of last year, Judge Rickman granted the appellee's Motion for a Summary Judgment and in doing so found that contiguity for the purpose of the City of Joliet annexing certain property existed, that 19 1⁄2 feet constituted substantial contiguity, and that the annexation represented a natural and gradual extension of Joliet's municipal boundaries. We appealed that decision. At issue before this court is whether the 19 1⁄2 feet is consistent with the trend of case law since the Wild Case in 1907 or whether the 19 1⁄2 feet is more representative of subterfuge, which the courts and the legislature have found to be invalid. By way of background, in 2018, October of 2018, the City of Joliet adopted certain ordinances, annexing certain parcels. In our briefs we call out those parcels as parcels A, B, and C. Those parcels would be annexed for future development by LOVES, for a large transportation facility for trucks, automobiles, etc. The location of the purported contiguity was between parcel C and the property that we're referring to today, and in our briefs is the Warren Dorff's property. That property is located at 1310 New Lenox Road, and the contiguity is shown on the maps that you have and that you've looked at in our briefs. A tiny little corner compared to roughly 14 acres of property, which was thought to be annexed. To be clear, parcels A, B, and C did not have municipal sewer and water, and neither did the Dorff property. One of the things that the courts have cautioned against in their decisions is the issue of subterfuge. It's in that context that I'd like to offer a little perspective about what happened in this case. LOVES sought to annex the property, as I said, for a massive development, and in doing so its representative, Ricky Schofield, did some legwork. Part of the legwork was to acquire the properties. He eventually acquired parcel C and then assigned that over to LOVES. But in that process, he was cautioned and counseled against acquiring parcel C, which would only provide contiguity with the Dorff's property by the disputed 19 1⁄2 feet. That was something that raised red flags for his counsel and the counsel of the city of Joliet. He was advised to buy a larger parcel so that contiguity wouldn't be so tenuous or dubious, but unable to do that, parcel C was acquired, and hence the 19 1⁄2 feet that we're here for. Who were you saying advised him not to purchase? The city of Joliet's counsel and his own counsel. That's in the record. Where is that in the record, counsel? I referred to the record. It would be in Volume 7, pages 1993 through 2000. There's also reference in Volume 7, pages 1962, 65 through 75, 88, 2015 through 16, 2035, and I missed a page here, 1988. The intense development proposed by LOVES would have 300 trucks coming in and out every day, along with 1,200 cars. It would have a retail tire store, two restaurants, a convenience store, showers, and restrooms for those who would need it. Much of that proposed development, as part of the ordinances, was the ordinances also include a rezoning from residential to business to accommodate much of that development. The issues on appeal that we bring before this court are several. One, whether Judge Rickman's order finding that there was no disputed issue of material fact in granting the motion for summary judgment was against the manifest way that the evidence and failing to recognize the disputed issues. Two, whether his decision in finding the 19 1⁄2 feet satisfied the statute and in turn satisfied the standard of substantial contiguity. And three, whether the 19 1⁄2 feet of touching represented a natural and gradual extension of the City of Joliet's municipal boundaries. As this court knows, the main statute that we're talking about is found in 65 ILCS 7-1-1. That references annexing territory. Any territory that's not in the corporate limits of any municipality but is contiguous may be annexed. It's that word contiguous or contiguity that has been looked at by many courts since 1907 in the Wild Case. And that interpretation or that discussion of what represents contiguity that we believe Judge Rickman actually got wrong. While he correctly found that the standard of substantial contiguity in his order, the application of 19 1⁄2 feet to say that represented substantial contiguity, we believe is incorrect, contrary to the many cases in over 117, 16 years of case law since the Wild. Counselor, is the issue of contiguity and whether or not 19 1⁄2 feet is sufficient to bestow contiguity, is that an issue of law or is that an issue of fact? That's a great question. And that's a tough answer to give to you because it's kind of embedded. And it's not necessarily, Your Honor, just 19 1⁄2 feet. It is, we look at the case, I would look at the case in a more totality of circumstances case. We believe, and I will answer your question, that the appropriate standard review is whether a trial course decision was against the manifest way to the evidence. But, Counsel, on a motion for summary judgment, we review that de novo. In that context, Your Honor, that review was also looked at, or in that context, that same issue was also looked at in the North Barrington case. And in the North Barrington case, there weren't disputed issues. It was an annexation case. There were stipulated facts. There were no disputed issues. And the court issued the standard in that case as being against the manifest way to the evidence. So it is a little bit complicated or a conglomeration. But if we look at North Barrington and the other cases that we cited, including Frank and Westham, those cases, annexation cases, stand for the proposition that in the context of annexation and in North Barrington where there were no disputed issues, that's the standard review. So if we go back to your question, Your Honor, what we believe were questions of fact that existed that the trial court got wrong were several. They included whether, and I direct this court's attention, if it wishes, to the supplemental record, which is the hearing on the motion, pages 17 and 18, whether utilities were extended or not extended, whether there was a... But that's not contested. It's not a contested issue of fact. It's a fact. It is an issue of fact. But the, quote, counsel for, I suppose, Lowe's, acknowledged that utilities would have to run through Andy County. Property in the county. It's not under the municipality. They conceded, there's no contest that the utilities would not, would have to run through property not in this valley. So it's not a contested fact. There was a contested fact as to whether utilities could run through the Doors property. And because counsel made an issue of, well, you can walk through it and therefore there's contiguity, there's only 19 1⁄2 feet. We contested there's no way you'd get utilities through 19 1⁄2 feet of Doors property. We believe that that constituted a disputed fact. So the 19 1⁄2 feet is not disputed. The fact that the utilities don't run, won't be able to run through... Well, you're just saying whether or not utilities could run through that specific 19 1⁄2 feet is a disputed issue of fact. Yes, Your Honor. The other issue is there was a dispute of whether the contiguity or the touching was 19 1⁄2 feet or 52 1⁄2 feet. That was brought up. But it's not, now it isn't. I think Judge Rickman said, well, just assume, let's take the 19 5, we'll concede that. So it's off the table. We're dealing with 19 5 at this level, no matter what, even though you could have battled it out. He could have come to the other conclusion that it was a larger number. But he just said, no, even if it's 19 5, I'm fine with contiguity. So the fact is not contested. That fact is not. I'm glad to hear that that fact is not contested. It wasn't clear to me, but I'll take it. If we're only arguing about 19 1⁄2 feet... It might be contested if you end up back there by them. But for purposes of what we have to deal with, Judge Rickman said, let's just use 19 5. So we have to use that in our view of that. I guess it's more what I'm saying. I understand that. There were other disputed issues, such as whether the city of Joliet completely surrounded the unincorporated property or whether there were other nearby municipalities. These were all brought before Judge Rickman. Now, as I said before, we're heartened to know that Judge Rickman found the standard to be substantial contiguity, which is contrary to what Love's, I'm going to say, appellees collectively, Love's initially said, that they said the standard was a mere touching or adjoining. That's not the standard. So we're happy that Judge Rickman recognized that the standard was substantial contiguity. In addition to our claim that there were disputed facts and that the motion should not have been granted, we also believe that Judge Rickman just got it wrong on the law. And the law has been that the interpretation of the law for the last 16 years has been that that doesn't satisfy a reasonable, substantial touching in a physical sense, which is generally what the courts have addressed as the standard for contiguity. There is not one case that Love's has cited which shows that 19 1⁄2 feet or even close to 19 1⁄2 feet satisfies that standard. I would submit for this court that 19 1⁄2 feet is more akin to cornering than it is to a substantial adjoining or contiguity, which is required. As a matter of fact, in the Cherry Valley case, there was 20 feet that was in dispute and that was challenged. And the court in Cherry Valley said, no, this doesn't satisfy reasonable, substantial physical touching between a municipality and an adjoining parcel. But it doesn't say that it may never. No, it doesn't. It doesn't. And that's what makes this case challenging for us and for all of us. Because I recognize that each case rises and falls, especially in annexation cases, on their specific facts. But I'm also thinking about Justice Potter Stewart. You know it when you see it. And in this case, no court has seen 19 1⁄2 feet, 20 feet, or 50 feet as satisfying the physical, substantial touching between a municipality and another adjoining property. If you were to take Love's argument to its extreme and to say, well, there's only two feet of contiguity, but it's not a strip annexation and it's not an octopus annexation with several fingers. Therefore, it's okay. That turns the intent upside down. As long as it's two feet and it's not a strip, then it's okay. I don't think any court, I don't think the legislature, I don't think the statute contemplated that aberration of requiring a substantial physical contiguity between a municipality and an adjoining property for the purpose of annexation. Substantial is just coming from case law. That's correct. And that's what the cases have said repeatedly since Wilde, starting with Wilde in 1907. But the statute doesn't say that. The statute's not clear. No, the statute doesn't have the word substantial in it. But since Wilde, that statute's been interpreted to include substantial, physical, touching in a reasonable sense. And a litany of cases over the last 117 years have adopted that sort of standard, even though that language is absent from 711. Counsel, is the question of natural and gradual expansion of the city, is that a question of law or is that a question of fact? Again, I think it is both. And I'm going to try to answer your question as quickly as I can with my limited time. In this case, may I answer? You may proceed. Thank you. Natural extension has been looked at differently by different courts. Some courts look at it as a conjunctive, a requirement, or as a supplement of contiguity. But most importantly, the courts have looked at utilities and whether there is a natural extension. Here, as I said before, there were no utilities in the unincorporated or in the doors property. So not only do we believe that there wasn't a natural extension to Joliet's municipal boundaries, but we also, in addition to that, find that there was no substantive contiguity in light of the 19 1⁄2 feet. Would it be fair to say that contiguity and natural extensions are conclusions of law that need to be made, but they're based on the facts of the case? It's a conclusion of law. That would be fair to say, Your Honor. Okay. You will have five minutes for rebuttal, Mr. Shapiro. Thank you. Ms. Sons? Ms. Sons? Good afternoon. Good afternoon. Opposing counsel, may it please the court. My name is Kathy Sons. I'm here on behalf of Love's Travel Stops and Country Stores, Inc. Mr. Joseph Stockman is here with me on behalf of the city of Joliet, and Chad Bruner is also here as a representative of my client. The court entered summary judgment, finding that there was no genuine issue of material facts and that, as a matter of law, there was contiguity in this case. We do not concede that we are only dealing with 19.5 feet, but be that as it may, the court found that that was enough, and I think that this court can also find that that was enough. And just to be clear, I understand you didn't concede. I'm saying for appellate review, because the court said, I don't have to decide who's right on it. I'll go with the more conservative ruling. Even assuming it's only 19.5 feet, I still find this is what I understand it's going to be. Agreed. I'm saying for our purposes, it's not contested. That's what he used to make his conclusion. That is what he used. Okay. So in determining contiguity, it is a statutory requirement of annexation. Statute is 65 ILCS 5-7-11, and it says that territory can be annexed to a municipality if it is contiguous to the municipality. And it is a statutory requirement. What it is, the crux of that sentence is the first sentence of the statute, and it is the crux of the statute. And there's a whole body of case law that counsel spoke about, and I will also speak about below, that deals with that. But we also have to look to the statute itself and what the intent is of that statute. So after that first sentence, we have quite a long statute that goes through many other things. And they're all exceptions to the requirement of contiguity. And the statute clearly is intended for a liberal interpretation of allowing municipalities to annex property in a natural and gradual way. There's strips they allow to job. There's forest preserves they allow to job. There are all these things that are within the statute that expand the concept of contiguity. None of them contract the concept of contiguity. And the concept of contiguity began with Wilde v. Stevens back in 1907. That actually was not an annexation case. It was an incorporation case. But all cases that determine contiguity, whether it's under annexation, incorporation, or other aspects of the municipal code, do refer to that case. It was a short case. It was only about four paragraphs long. There was not a whole lot of analysis. But there was a picture, and a picture is worth a thousand words. And I blew this picture up. I know you can't see it, but you can blow it up too. And it really explains why the court decided how it did decide. There was a nucleus, not even or anything, but it had these arms. And not only was there cornering, but it was cornering of strips. And it was trying to reach far off land. And the court said, no, that's not really what contiguity is all about. After that, there were several other cases where municipalities tried to grab 75 miles of spiderweb of roadways. I said, that's not contiguous either. And in 1960 is really when we finally got the standard. Weill didn't set forth a standard other than to say we're not allowing cornering, and we're not going to allow these long, narrow strips to get to far distant land. In 1960, Kildare came down. And that is the case that said that lands need to touch or join in a reasonably substantial physical sense. And that's what has been applied since then. It also decided compactness is not required. And it said very clearly that extremely irregular borders will not defeat contiguity. I think that counsel and I can agree that there is no case in Illinois that is directly on point with respect to how much is enough. But we can look to the various cases to determine what qualifies as reasonably substantial physical sense. Certainly, Kildare didn't really provide any metrics or any way of judging that. But the cases that have come down since then have been somewhat helpful. Counsel directs your attention to the Cherry Valley case, which is a 20-foot connection. I would invite the court also to look at that case, but for very different reasons. That case determined that 20 feet was not enough, but that was not a direct connection case. That was a case in which there was a roadway 100 feet and another 120 feet that stretched out 1,276 feet to reach this bigger, wider property. That was your traditional strip annexation. And the court said, we are not going to allow this. This is strip annexation. This is subterfuge. This is not really a direct connection. There have been a number of other cases, and we can look to Mr. Dworce's annexation itself. He was connected to the city by 66 feet. So I think that the plaintiffs need to concede. Relators need to concede. 66 feet is enough, because that's what they connected by. What is it between them? There's some other cases. There's Chatham Woods. 128 feet was enough. If we look at some disconnection cases, there was 150 feet was enough in Indian Valley. And so I need to stop you for a minute. Sure. And this is my dilemma. My dilemma is, this is a summary judgment. That means there was no trial. There was no evidence. Correct. And the problem I have with that...  Okay, there was no trial. The problem I have with that is that we keep talking about reasonably substantial. We're talking about natural extension. We don't know what the rest of the area looks like. We don't know what is beyond the Dworce property. We know we have the issue of utilities. We don't know what Loves proposes to do as far as utilities, because we know that their intended use for the property is one that's going to be utility heavy. We don't have a lot of information, and neither did the trial judge, in order to make this determination, because reasonably substantial, reasonable, is a question of fact. Natural extension, doesn't that imply a question of fact? So the difficulty I'm having is the difficulty of sorting through between questions of flaw and questions of fact, because if it's a question of fact, then there hasn't been any hearing, there hasn't even been any discovery for the court to be able to make those determinations a fact. If it's a question of law, then it should be more straightforward. But that's the dilemma I'm having. When I see phrases like reasonably substantial, and these cases are not decided, for the most part, most of these cases are not decided on summary judgment. So the issue that I have is not with whether or not it's the natural extension or reasonably substantially contiguous, it's was it too soon to make that determination? Is this something that could be decided on a summary judgment? So there are cases where contiguity is decided on summary judgment, and I've cited maybe five or six of those in my briefs. So the courts have found, and even in negligence cases, it's a similar application of facts to the law, and they said where there is no dispute of facts, this can and should be cited as a matter of law under a summary judgment. If you look at Chatham, that case called it a mixed issue of question and fact, but said it's mostly a question of law and fact, but that it's mostly a question of law. And when it's a question of fact, when you're juggling different facts, but here all the facts were there, and there was a discovery, and it is in the record how the utilities are going to get there. It is part of the annexation agreement that LOVES is going to bring the utilities there, and they're going to pay for how it gets there. So that is in the record. Certainly I can't say that every question you raise is in the record, but that's up to the parties to bring that evidence out through the depositions, and no one was contesting that there is a question of fact, and the case law suggests that you can decide this as a matter of summary judgment. And if you look at the North Barrington case, that was decided on summary judgment and interestingly applied the manifest weight of the evidence standard. So there are cases, and if you look at ROPEC and village annexation of property to the village of Plainfield, those cases kind of outline how they fall in, and they say that the cases where they find non-contiguity fall into categories that are cornering or strip annexation, and we don't have either one of those here. In Plainfield, they pointed out that almost all annexation decisions are upheld, and the ones that are found non-contiguous fall into, they outlined it a little differently. They said cornering or where it's this strange shape where you would be surrounding another municipality or where, which was what happened in Chatham, or where another municipality would be surrounded or something of that nature. So we don't have those facts here. What we have is a direct connection where the property is planned as part of the development. It's 19.5 feet, and in Wild, the court talked about, you know, you can't even walk from property to property without stepping outside. You can't drive a car. Neither of those facts that the court talked about in Wild apply to this case. I'm not aware of any case, certainly counsel hasn't pointed out any case, where there's a direct connection, not by use of strips of any sort, where the court has found that this is not enough. So it's true that we don't have a case directly dealing with a direct connection of 19.5 feet. But again, we know that 66 is enough. We know that 128 is enough. We know that the utilities can get there. And in fact, further, and I'm not saying that they've been brought there or that you should look after it, but it does further the concept of natural and gradual extension, because it will enable those utilities to be available to other people as well. There is areas, there are areas of the city that are north of the property, south of the property, east of the property, and west of the property. Now, I'm not saying they touch the property, but this is not a far-off extension like we have in Chatham, where there's a long strip that goes a long way, distant from the city. This is filling in an area where there's city all around it, and is filling in an area that is unapproachable. You're saying maybe some of those other areas shouldn't have been annexed that way. Sounds like one of those odd shapes. Well, I mean, if you look at virtually any municipality, I mean, they're all very odd shaped, and they're all brought in because you have your original often odd shape, and then property is annexed because it needs to be annexed, either for city purposes or for developers' purposes, and those end up not being squares or rectangles or anything else. But this is not a strip. It's not a far-distant property. It's not any of the things that the court has expressed concern about. It's not a subterfuge. It's being used for the development. The property that's directly across actually isn't commercial. It stays residential because the planned use is detention. But it's all part of the development, and it was a needed part of the development. Even if it had been used strictly for reaching the property, the courts have said that's okay, and if you look at the case, the 1970 case that people often cite, I think it's Buffalo Grove, they actually forcibly annexed somebody else's property in order to get to it, and they said, well, you know, if you have enough, we're going to allow that. So it was annexed specifically for the development, not simply for contiguity purposes, but even if it was, that is allowable. And there's no case that says, there's no case where there's a direct connection and there's not some odd facts with subterfuge or with cornering that finds that it is not contiguous. So on that grounds, I think that the decision of the trial court should be affirmed. Thank you. Any other questions? I have no other questions. No. Okay. Mr. Shabiro, rebuttal. Thank you. Thank you again. What have we learned in the last 117 years? There must be more than a mere touching between unincorporated property and the municipality to find contiguity. Kildare. There must be reasonable substantial touching, connection, or joining between the properties for contiguity. Kildare. The intent of the legislature, as expressed by the words contiguous, is the territory must have substantial common boundary. Spalding versus City of Waukegan. The purpose of substantial contiguity. I'm sorry. There should be no cornering. And that case was cited by counsel. In addition, I think that the distinction that counsel is making is a distinction without a difference. If we look at all those lessons from the cases, and we also look at cases like Cherry Valley or like Hanson, for example, 40 to 50 feet, 20 feet, they all say this doesn't cut it. This is not consistent with how we have been interpreting the law. What counsel is trying to do is create an exception that says small areas of contiguity or cornering, maybe, is okay, provided that there's not a strip or oddly shaped annexation. I believe that in doing so, the expansion of the statute that you talked about would actually turn into driving a huge hole into the statute. It wouldn't be a mere expansion. It would be an aberration. Cherry Valley and Hanson are instructive. The other thing, to the court's point, is that we did offer disputed issues of fact at the hearing, and I again refer the court's attention to our response to the motion for summary judgment, our arguments at 17 and 18, and the supplemental proceedings, and even the court's acknowledgement that there was an issue of fact on page 18. Although it's not required, and that Judge Rickman was not required to issue findings, we have recognized that. The fact that there weren't findings causes me to have the same sort of problem with the motion for summary judgment, given the absence of any specific record or findings or testimony that, Justice, you just brought up. It was, I believe, a, well, a higher notice of appeal, an incorrect decision. The other implication that could happen, if you were to take Love's argument and move it forward, is a city adopts an ordinance or ordinances in Nexon property, the ordinances themselves are procedurally adopted. It says one, two, five, six feet of contiguity, and boom, motion for summary judgment. Again, I don't think that sort of implication or consequence was intended by the case law, by the statute, or by the legislature. I'm happy to answer any questions that the court may have. Thank you. No questions. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement, and we'll issue a written decision as quickly as possible.